Oscar P. Rusch, Administrator, Appellant, v. Henry G. Hoffman et al., Appellees.

No. 43817.

June 15, 1937.

Carl H. Lambach and Howard E. Kopf, for appellant.

C. C. Putnam, Smith, Swift & Maloney and Charles E. Wittenmeyer, for appellees.

PARSONS, J.—This is an action to recover damages for the death of Lena Rusch alleged to have been caused by the negligent operation of a motor vehicle driven by the defendant Lloyd H. Hoffman, with the knowledge and consent of the defendant Henry G. Hoffman, the owner and his father.

Lena Rusch and her sister Millie Rusch, resided on a small farm, carrying on farming operations, near Davenport, Scott County, Iowa. Lena was 52 years of age and her sister was 54 at the time of the accident. On the 23d of February, 1935, while they were going home from Davenport, in a car owned by their brother, Oscar P. Rusch, and being driven by Millie Rusch with his knowledge and consent, while traveling north on Brady Road in the City of Davenport, at about 8 o'clock p. m., and when opposite what is known as the "Battery", the headquarters of a battery of the Iowa National Guard, and within a suburban district, they collided with a car owned by the defendant Henry G. Hoffman, being driven by his son and the defendant Lloyd H. Hoffman, with the consent of the owner. Lena Rusch was killed. An administrator was appointed for her estate, and said administrator brought suit to recover damages by reason of

the death of Lena. This action was tried in the district court of Scott County, Iowa, and resulted in a verdict and judgment for the defendant, from which an appeal has been taken to this court.

The plaintiff, in his petition, set forth ten specifications of negligence, which it is not necessary to repeat here. It was averred in the petition also that at the time of her death Lena Rusch was 52 years of age, in good health, able to earn a livelihood as an operator of a farm, and capable of earning $1,500 a year, and that her death was caused by the negligence of the defendant Hoffman, owner of the car, and Lloyd H. Hoffman, who was driving same with the consent of the owner, and the administrator asked damages in the sum of $15,000. The defendant denied generally the allegations of the plaintiff.

The evidence shows without question that there was a collision between the two cars at about the point alleged in the petition, and that as a result thereof Lena Rusch came to her death.

At the close of all the evidence the court, on motion of the defendant, withdrew from the jury the claims of the plaintiff based on specifications of negligence numbers 1, 2, 3, 4, and 6, leaving only the specifications of negligence numbers 5, 7, 8, 9, and 10, which were:

5. In failing to keep said automobile upon the westerly or their right-hand side of the street.

7. In failing to use ordinary care in the operation of said automobile so as to avoid injury to the deceased.

8. In driving said automobile upon the streets carelessly and heedlessly in disregard of the rights and safety of others.

9. In operating said automobile without care or concern for consequences.

10. In operating said automobile at a speed in excess of that provided by law and in violation of Ordinance No. 104 of the City of Davenport, Iowa, Article 8, Section 56.

The case was then submitted to the jury under the instructions of the court. The jury found for the defendants; the plaintiff filed exceptions to the instructions, and motion for new trial, in which he properly objected to instructions 9, 10, 13, 14, 15, and 16.

■■■ This accident took place within the corporate limits of the City of Davenport. There seems to be some discussion as

to what statute should apply. The discussion ranges around sections 5019, 5020, and 5030. Section 5019 provides that the operators of motor vehicles in cities and towns shall at all times travel on the right-hand side of the center of the street. Section 5020 provides that persons on horseback, or in vehicles, including motor vehicles, meeting each other on the public highway, shall give one-half of the traveled way thereof by turning to the right. Section 5030 provides for municipal speed districts, and sets a limitation as to speed in four classified districts, the last of which is "suburban district". So section 5030 only applies to speed, and leaves section 5019 as the controlling section as to paths automobiles should take, that is, on the right-hand side of the center of the road.

There was evidence in this case that in the center of the street upon which the two cars were traveling, there was a painted line.

Objections are made to different instructions of the court, but in our opinion the most serious question is as to the giving of Instruction 14 of the court. In this instruction the court properly told the jury that evidence may be either direct or circumstantial, and defined both kinds of evidence, saying, "The two kinds of evidence are often, but not always, of equal value, and a litigant may, if he chooses, or where there is no direct evidence, rely wholly upon circumstantial evidence for proof of any fact essential to his case." The instruction then proceeds to state to the jury that the only evidence introduced on behalf of the plaintiff, as to whether the car of decedent was upon the right-hand side of the street at the time of the accident, was the testimony of the driver of the Rusch car and the witness Dungan. The instruction then stated that in determining whether the circumstances relied upon furnish any evidence of the conclusion sought to be drawn therefrom, the rule is that the facts which the circumstantial evidence tends to establish, must be of such a nature and so related to each other that such conclusion is the only one that can fairly or reasonably be so drawn; that it was not sufficient to so find merely because these circumstances are consistent with the conclusion that her car was on the east half of the highway, if the circumstances are equally consistent with the conclusion that she was on, or partly on, the west half of the highway at the time of the accident.

In the latter portion of the instruction we feel there was

error. There was direct evidence by the driver of the Rusch car. Millie Rusch, the driver of the car, testified in regard to the collision that she had not at any time driven left of the center line on the highway, and says: "There were no cars within the range of my lights in front of me immediately prior to the time I was struck, immediately prior to the time of the collision. I was close to the outer edge, if anything, out on the shoulder. I had not driven left of the center line at any point between the Duck Creek bridge and this place, nor had I passed any vehicles, nor was I trying to pass any vehicles. * * * I would say just a few seconds elapsed between the instant when I saw the lights approaching and the impact of the collision. At that time I was on the right-hand side of the road."

Officer Dungan testified as to the broken glass, and said most of the glass was lying on the east side of the highway, over the center line; that he observed burned rubber tire marks on the pavement, starting on the east side and following the Hoffman car to the ditch, in continuous unbroken lines. That there had been only two cars in and out, the squad car and the ambulance. He said he observed the tire marks and glass when he first came up there; that the Rusch car had a cab on and a pickup box on the back. The left front wheel and fender were smashed in, the radiator was pushed back and the hood thrown off it, and it looked as though the motor was twisted in the frame.

The instruction 14 laid down the rule which is not applicable to cases where there is any direct evidence whatever. It is only applicable where there is no direct testimony of the accident. This rule was originally laid down in Asbach v. C. B. & Q. Ry. Co., 74 Iowa 248, 37 N. W. 182, and has been quoted and cited in other decisions in other states, perhaps as many times as any case written in this state. The district court filed a written ruling on the motion for new trial and referred to Reimer v. Musel, 217 Iowa 377, 251 N. W. 863, 864, as sustaining him.

In the Reimer case, W. C. Reimer, administrator of the estate of Clarence Reimer brought suit to recover damages for the death of Clarence, resulting from a collision between his car and one driven by Musel. The defendant Musel was driving in a southeasterly direction around a curve, while Reimer was driving west and northwest on the same curve. Suit was

brought, and the case was tried. Verdict was entered for plaintiff, and Musel appealed. He was the only eyewitness to the accident, he and Reimer each driving their cars alone. He testified that he was on the right-hand side, or the southwest side of the black line at the time of the collision, and was traveling about 35 miles an hour. There was no other evidence except the physical facts. It was the claim of the administrator that the physical facts immediately preceding, and at the time of the collision between the two cars, showed Musel was on the left-hand side of the traveled portion of the highway, and that he failed to give one-half of the highway to the Reimer car. This was the sole and only ground of negligence on which the court submitted the case to the jury. The physical facts were the locations of the cars after the collision, broken glass, and such other conditions, certain tire marks made by the sliding of the wheels with the brakes on, etc. The appellant had made a motion for a directed verdict, setting up that the plaintiff had failed, by a preponderance of the evidence, to establish any negligence on the part of the defendant, or that any negligence on the part of Musel was the proximate cause of the accident, and of the resulting death to Reimer. The court overruled the motion and sent the case to the jury, which found for plaintiff. In commenting on this case the court says: ''The appellee's right to recover in this case is based entirely upon circumstantial evidence.'' Then it cited the well-settled rule of this state, that ''a theory cannot be said to be established by circumstantial evidence, even in a civil action, unless the facts relied upon are of such a nature, and are so related to each other, that it is the only conclusion that can fairly or reasonably be drawn from them.'' The court also cites the rule laid down in the Asbach case, and many citations supporting it, further saying, ''Another rule of this court is that the cause of the accident must be clearly shown and cannot be left to speculation or conjecture.''

There was testimony to the effect that the police officers arrived at the scene of the accident very promptly and found the Rusch and Hoffman cars, and the two women on the pavement. They found the Rusch car standing on the east side of the pavement, almost straight across east and west, but a little diagonally to the southeast. The front wheels were off the paving on the east side, the rear wheels on the east side of the center line. The Hoffman car was completely off the pavement,

the front tire about a foot or fifteen inches from the edge of the pavement. It was a little to the north of the Rusch car, but almost straight across from it. The rear of the Hoffman car was swung to the west of the front of it. They found most of the glass on the east side of the highway over the center line; there were tire marks on the pavement of burned rubber, starting on the east side and continuing over to the Hoffman car, and they were continuous unbroken lines.

The witnesses for the Hoffmans testified contrary to the testimony of Millie Rusch. That raised a conflict in the testimony. The instruction given by the court, it seems to us, prevented the jury from giving these circumstances testified to the proper weight, for the jury might very well conclude from that; that these circumstances alone did not establish the facts which were sought to be established, i. e., the place where the accident took place, and that they should not be taken into consideration in corroboration of the testimony of Millie Rusch. We think that is a disparagement of the testimony, whatever the rule may be where a case depends wholly and entirely upon circumstantial evidence, as this is not such a case. All the surrounding and attending circumstances may be taken into account to determine as to the truth of matters testified to by witnesses giving direct testimony. Asbach v. C. B. & Q. Ry., 74 Iowa 248, 37 N. W. 182.

In this Asbach case, on page 250, 37 N. W. 183, the opinion says:

"A theory cannot be said to be established by circumstantial evidence, even in a civil action, unless the facts relied upon are of such a nature, and are so related to each other, that it is the only conclusion that can fairly or reasonably be drawn from them. It is not sufficient that they be consistent, merely, with that theory, for that may be true, and yet they may have no tendency to prove the theory. This is the well-settled rule, and it is manifest that under it plaintiff's theory is not established. The facts relied upon to prove it are quite as consistent with the theory that the animal went upon the bridge of his own volition, or that he was frightened by something else than a train, and ran upon it, as with it. Plaintiff, then, has not shown the cause of the injury."

■■■ What theory was the plaintiff undertaking to establish?

The theory that she was on the right-hand side of the highway when the collision between the two cars took place, and such being the case, the defendants, under the statute, were guilty of negligence. Her theory could be supported by the facts and circumstances, and from all the evidence, both the testimony of the witnesses for defendants, the plaintiff, and the surrounding circumstances, should be allowed to go to the jury for its own conclusion, and should not be told that these could not be considered except under the conditions the court laid down, i. e., that in determining whether the circumstances relied upon furnish any evidence for the conclusions sought to be drawn therefrom, the rule is that the facts which the circumstantial evidence tends to establish, must be of such a nature and so related to each other that such conclusion is the only one that can fairly or reasonably be so drawn.

Our attention has been called to no case which holds such an instruction to be proper. The Asbach case has been referred to so frequently in the Iowa decisions, and never modified, that we feel no other citation along this line is necessary, other than an examination of the citations on page 380 of the case of Reimer v. Musel, 217 Iowa 377, 251 N. W. 863, at page 865. For the reasons pointed out, this case is reversed and remanded to the district court of Scott county, Iowa, for retrial.—Reversed.

STIGER, ANDERSON, MITCHELL, HAMILTON, SAGER, and KINTZINGER, JJ., concur.

DONEGAN, J., took no part.