James W. France, appellee, v. Kenneth Benter and Arlan Benter, appellants.

No. 51295.

(Reported in 128 N.W.2d 268)

MAY 5, 1964.

Swift & Swift, of Manchester, for appellants.

August F. Honsell, Jr., of Cedar Rapids, for appellee.

THOMPSON, J.—This is a small case with some large diffi-culties. The amounts involved both in plaintiff's petition and the counterclaim are $254.18 and $657.22 respectively. No personal injuries are involved; the sums claimed being for damages to the plaintiff's automobile and the car belonging to the defendant Kenneth Benter sustained in a collision between the two vehicles on April 16, 1961, in the town of Walford. By stipulation at the trial, which was to the court without a jury, plaintiff's damages were fixed at the sum claimed as set forth above; and the necessary and proper repairs to Kenneth Benter's car at $532.22, plus an agreement that the fair and reasonable time needed for repair of the Benter car was fourteen days.

Some difficult and important legal questions arise. The collision occurred in daylight, at a time when both automobiles were traveling northeast on highway No. 149, which passes through the incorporated town of Walford and forms the main street of the town. The evidence shows without dispute that the collision happened in the corporate limits.

The defendant Arlan Benter was driving an automobile

owned by his brother, Kenneth Benter, with the latter's consent. Kenneth Benter was not present, Arlan being accompanied by one Mary Sackett. Following the Benter car and traveling at a considerably faster speed was the vehicle owned and driven by the plaintiff, who was alone so far as the record shows. As the Benter car started to make a left turn into a service station on the northerly side of the roadway, the plaintiff was in the act of passing on Benter's left. A collision occurred in which the two cars were damaged as stated above.

The trial court found the facts and law for the plaintiff, and entered judgment against both defendants in the sum of $281.10, which was the agreed cost of repair with interest from the date of the collision. The counterclaim of Kenneth Benter was dismissed, and we have this appeal.

I. The basic proposition raised by the assignments of error is this: was the plaintiff guilty of negligence as a matter of law?

This divides into two questions: Was the plaintiff guilty of negligence per se because he failed to give timely notice of his intention to pass by sounding his horn; and was he guilty of such negligence because he drove on the left side of the center of the street in violation of section 321.297?

We are of course bound by the findings of fact of the trial court if they are supported by substantial evidence; it is only when such findings are undisputed or no conflicting inferences may be drawn from them that we may interfere. We may also find error if the trial court applied erroneous rules of law which materially affected the decision. We review the record with these principles in mind.

II. The defendant contends that the plaintiff was negligent as a matter of law because he failed to sound his horn or to give any warning of his intention to pass before attempting to do so. The record shows that he gave no horn signal until he was in the act of passing; his own testimony is that he did not sound his horn "prior to passing the other car and didn't blow it until I realized he was going to turn left and I saw an accident was going to happen."

We have not heretofore definitely decided whether failure

to sound a horn before attempting to pass a preceding vehicle going in the same direction is negligence per se. The defendant relies upon Clayton v. McIlrath, 241 Iowa 1162, 44 N.W.2d 741, 27 A. L. R.2d 307, and cases from other jurisdictions. But in the Clayton case we were discussing the refusal of a requested instruction which would have told the jury that the driver of an overtaking car must not only sound his horn but must be reasonably assured the preceding driver heard the signal. The case must be considered with that situation in mind. It is possible to construe some of the language used to support an argument that the horn signal must be given, or a conclusion of negligence will be mandatory. But a careful analysis of the case does not support such an interpretation.

No Iowa statute requires the giving of a horn signal before attempting to pass an overtaken vehicle. So the failure to give such a signal does not bring the case within the rule of Kisling v. Thierman, 214 Iowa 911, 243 N.W. 552. There we held that failure to obey a statutory law of the road is negligence per se, except that violation of what is now section 321.298 is merely prima facie evidence of negligence. This exception is not material here.

The only statutes bearing on the question of duty to sound a horn before passing are 321.299 and 321.432. We quote the pertinent part of section 321.299: "Except when overtaking and passing on the right is permitted, the driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on audible signal and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle." The following sections 321.300 and 321.301 deal with the duty of the overtaken driver when the signal has been given.

The other statute dealing directly with horns is section 321.432, which is set out: "Every motor vehicle when operated upon a highway shall be equipped with a horn in good working order and capable of emitting sound audible under normal conditions from a distance of not less than two hundred feet, but no horn or other warning device shall emit an unreasonably loud or harsh sound or a whistle. The driver of a motor vehicle shall when reasonably necessary to insure safe operation give

audible warning with his horn but shall not otherwise use such horn when upon a highway."

Neither of these sections places on the overtaking driver any positive duty to sound his horn before passing. Admittedly he may well be guilty of negligence in failing to do so; but this is a fact question, arising from a violation of a common-law duty rather than from a violation of any statute. In fact, section 321.432, supra, seems to leave the question open to a finding of fact. It requires the sounding of the horn only when "reasonably necessary to insure safe operation." We recognized this in Stiefel v. Wandro, 246 Iowa 807, 815, 68 N.W.2d 53, 58, a case in which the passing driver admitted he had not sounded his horn. We said: "Under all the circumstances it was for the jury to say whether it was reasonably necessary in order to insure safe operation of the defendant's car that he sound his horn." Likewise, in Short v. Powell, 228 Iowa 333, 337, 291 N.W. 406, 408, after quoting what is now the material part of section 321.432, supra, we said: "As to when the horn must be used being thus left to the reasonable discretion of the driver, it would seem to require no argument or citation to show that whether plaintiff would have sounded his horn was a fact question rather than one of law."

Much in point is the reasoning of the Michigan Supreme Court in McLaughlin v. Curry, 242 Mich. 228, 232, 218 N.W. 698, 699. We quote: "By the Act of 1927 the duty of giving an audible signal was placed on the driver of the passing car, while under the Act of 1925 the duty of yielding was placed on the driver of the passed car when and if the signal was given. The trial judge correctly stated to the jury the effect of the statute then in force. A duty was placed on the driver of the passed car to yield if the signal was given, but the duty to give the signal was not placed by the statute on the driver of the passing car."

It is evident the Michigan statute considered was in effect the same as the above quoted part of our section 321.299.

The Louisiana Court of Appeal has considered the question before us at this point. Speaking of an ordinance of the City of New Orleans, which was apparently substantially like our

section 321.299, the court said: "* * * we are of the opinion that it was not the intention of those who drafted and enacted the Ordinance 'to require that the horn of every vehicle be sounded whenever its driver intends to pass a vehicle which is already sufficiently far to the right. It is quite plain that the purpose of the * * * provision was to give to the overtaking vehicle the right to require the vehicle ahead to swerve to the right in order to afford a path in which the overtaking vehicle might pass'." Martin v. Globe Indemnity Co., La. App., 64 So.2d 257, 259. To the same effect is Service Fire Insurance Co. v. Indiana Lumbermans Mutual Insurance Co., La. App., 111 So.2d 358, 362.

Cases in other jurisdictions have held that failure to give a timely warning of intention to pass by sounding a horn is negligence as a matter of law. Suren v. Zuege, 186 Wis. 264, 201 N.W. 722; Kerlinske v. Etzel, 194 Wis. 36, 215 N.W. 591; and Cadwell v. Anschutz, 4 Cal.2d 709, 52 P.2d 916, are cited to this effect. Whether they may be distinguished because of differences in statutes or for other reasons we do not determine. We believe our holding above is the proper one under our statutes. Bishard v. Engelbeck, 180 Iowa 1132, 1140, 1141, 164 N.W. 203, 206, while not factually directly in point, holds that it is not necessary to sound the horn in all passing situations, and somewhat strengthens our conclusion.

Attention should be given to Johnson v. Kinnan, 195 Iowa 720, 729, 730, 192 N.W. 863, 867. There appears language which says that it is the duty of the driver of the overtaking car to "give a signal". But again we were discussing the question whether it was the duty of the overtaking driver to make sure the preceding driver heard the signal. The statement was dictum. So far as the case may be thought to hold that it is the duty of the overtaking driver to sound his horn under any and all circumstances under pain of being held negligent as a matter of law if he does not, we do not now agree.

A statement in 60 C. J. S., Motor Vehicles, section 326c, at page 761, also bears some comment. It is there said: "The driver of the passing car need not assure himself that his signals were heard and understood by the driver of the preceding car, although if he is aware of the fact that his signals were not heard

he is negligent if he proceeds to pass without further signal." The sole authority cited for this is Ellzey v. Booth Furniture and Carpet Co., 2 La. App. 431. It may seem logical to deduce that if the overtaking driver is negligent if he gives a signal which he knows is not heard, he is equally negligent if he gives no signal at all. Such a deduction, however, is not necessarily sound. The fact that a signal was given might be some evidence that one was thought to be needed. In any event, the Louisiana courts no longer follow the rule, as shown by the cases cited above. They now hold that no signal is needed when the over-taken driver is on his right-hand side far enough so that he is not required to "yield to the right."

This leaves the question whether the facts show the plain-tiff's failure to use due care so clearly appeared that a directed verdict was required. We think the question whether there was common-law negligence on the part of the plaintiff was for the trier of facts. This is the general rule. We may not interfere.

III. The defendant further contends that the fact that the plaintiff, in attempting to pass, drove on the left side of the road makes him guilty of negligence per se. In support of this he relies on section 321.297 of the 1962 Code, which we set out: "The operator of a motor vehicle, in cities and towns, shall at all times travel on the right-hand side of the center of the street."

Taken literally, this appears to uphold defendant's position. In addition to the statute, certain cases are cited. Silvia v. Pennock, 253 Iowa 779, 113 N.W.2d 749; Rusch v. Hoffman, 223 Iowa 895, 274 N.W. 96; and Winter v. Davis, 217 Iowa 424, 251 N.W. 770, are relied upon. Without doubt there is language in each of these cases which supports defendant's contention. It must be noted, however, that each of these cases involves a different factual situation from the one we have here. In each case the colliding cars were proceeding in opposite directions; and the holding in each is that an operator who drives across the center line to the left side of the street in the face of oncoming traffic is guilty of negligence, absent a showing of legal excuse.

This does not quite reach the question whether a driver in a city or town who crosses to the left of the center of the street in passing an automobile proceeding in the same direction is

necessarily guilty of negligence as a matter of law. An affirmative holding on this question would place an intolerable burden upon traffic. The driver who found himself behind a slow-moving vehicle could under no circumstances pass it unless the street upon which he was traveling was wide enough to permit him to do so while still remaining on the right of the center of the traveled roadway. Not many city or town streets are so wide.

The result of such a holding would amount to unreasonableness; and it is our duty whenever possible, to so construe a statute as to avoid injustice, unreasonableness or absurdity. Schuler v. Holmes, 242 Iowa 1303, 1305, 49 N.W.2d 818, 819, and citations.

Another well settled rule that comes into play here is that when statutes relate to the same subject matter, when they are in pari materia, they must be construed together, Lewis Consolidated School District v. Johnston, 256 Iowa 236, 244, 127 N.W.2d 118, 124, and cases cited.

This brings us to sections 321.299, 321.303 and 321.304. So far as material section 321.299 says: "The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle." Also material is section 321.303, which we quote: "No vehicle shall be driven to the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within one hundred feet of any vehicle approaching from the opposite direction."

Section 321.304 is also material. It is quoted:

"No vehicle shall, in overtaking and passing another vehicle or at any other time, be driven to the left side of the roadway under the following conditions:

"1. When approaching the crest of a grade or upon a curve in the highway where the driver's view along the highway is obstructed for a distance of approximately seven hundred feet.

"2. When approaching within one hundred feet of any narrow bridge, viaduct, or tunnel, when so signposted, or when approaching within one hundred feet of or traversing any intersection or railroad grade crossing.

"3. Where official signs are in place directing that traffic keep to the right or a distinctive center line or off-center line is marked, which distinctive line also so directs traffic as declared in the sign manual adopted by the state highway commission."

These sections seem to qualify section 321.297. A "roadway" or "highway", referred to in sections 321.299, 321.303 and 321.304, includes streets in cities and towns as well as highways outside them. Sections 321.303 and 321.304 are later enacted statutes than section 321.297 and must have been passed with the earlier one in mind. We think the four statutes must be read together, and that driving on the left side of the street in a city or town must be held not under all circumstances to be negligence per se, but is governed by section 321.297 as qualified by the other three.

Indeed, section 321.304 would be entirely ineffective in cities and towns, if we were to adopt the construction of section 321.297 contended for by the defendant. There are grades, and curves, and obstructed views in city and town streets as well as in country highways; there are narrow bridges, and tunnels, and viaducts and intersections, and grade crossings, in cities and towns as well as in the country. But section 321.304 by its terms applies to all highways, both inside and outside of incorporated municipalities. The intent of the legislature that section 321.297 is to be read with and qualified by sections 321.299, 321.303 and 321.304 is clearly demonstrated.

It is also to be noted that we have held that section 321.297, supra, does not mean a driver may not turn across the left side of the roadway in order to enter a driveway. In Richards v. Begenstos, 237 Iowa 398, 410, 21 N.W.2d 23, 29, we said: "Notwithstanding the provision of section 5024.01 [now section 321.297], requiring the operator of a motor vehicle, in cities and

towns, to at all times travel on the right-hand side of the center of the street, he had a right to make such reasonable use of the left side of the street as might be necessary to turn into the crushed stone driveway at the place he attempted to."

This shows the directive to drive on the right side of the roadway in cities and towns is not at all times and in all situations an absolute prohibition against using the left side when necessary, and when other statutes requiring due care in giving signals and giving way to oncoming traffic are observed.

IV. The plaintiff has attempted to avoid the effect of section 321.297, as claimed by the defendant, by citing certain cases which hold that driving on the left-hand side of the street in passing is only prima facie evidence of negligence. While we have held in Division III that it is not negligence as a matter of law to so pass, for the reasons there stated we think it proper to say that these cases are not in point. The cases relied upon by the plaintiff are Dickeson v. Lzicar, 208 Iowa 275, 225 N.W. 406; Cuthbertson v. Hoffa, 205 Iowa 666, 216 N.W. 733; Smith v. Town of Hudson, 202 Iowa 300, 207 N.W. 340; and McElhinney v. Knittle, 199 Iowa 278, 201 N.W. 586. They hold what the plaintiff claims for them; but they were in effect, if not by name, overruled in Kisling v. Thierman, 214 Iowa 911, 915, 243 N.W. 552, 554. After discussing the conflict in our previous decisions on the question, we there said:

"This apparent conflict in our opinions should be eliminated and a definite and certain rule fixed so that the bench and bar will have a definite guide in the trial of cases of this kind. We think the most satisfactory rule would be that, except where by statutory provision it is otherwise specifically provided, the failure to obey any of the provisions of the statutes or ordinances providing the manner, method of the use and operation of vehicles on the highways, including streets, together with any provisions therein governing the equipment of vehicles and the use thereof, should be held to be negligence, and not prima facie evidence of negligence."

From that time on it has been the law in Iowa that a violation of a statutory law of the road is in itself negligence and not merely prima facie evidence thereof with one exception

544

pointed out in Division I above, not pertinent here. The "exception" we have made in this case is not in fact an exception; it arises from a construction of section 321.297 in connection with the other three cited statutes and qualifies its meaning accordingly.

It must also be said that we are not in a good position to point the finger at the plaintiff because he relies upon the cases which we have said no longer express the law in Iowa. We have our own fences to mend here. In Dakovich v. City of Des Moines, 241 Iowa 703, 709, 42 N.W.2d 511, 515, where it was contended a directed verdict should have been granted the defendant because the plaintiff was driving across the center line of the street, we said she was not negligent per se for that reason, and the directed verdict was properly denied. As support for this holding we cited and quoted from Smith v. Town of Hudson, supra, loc. cit. 202 Iowa 300, 304, 207 N.W. 340, 342. We were evidently overlooking Kisling v. Thierman, supra, in relying upon the authority of the Smith case. Under the circumstances in the Dakovich case the holding was correct; the basis stated for it was not. However, it is not the first time a court has been right for a wrong reason.

Our holdings in the previous divisions dispose of the case. The trial court found from the facts that the plaintiff was not guilty of negligence or contributory negligence. Accordingly there was no basis for a finding for the counterclaimant Kenneth Benter, the owner of the car which was damaged. The case is in all respects affirmed.—Affirmed.

GARFIELD, C. J., and HAYS, LARSON, PETERSON, THORNTON and STUART, JJ., concur.

MOORE and SNELL, JJ., dissent.

MOORE, J.—I dissent. I disagree with the holding in Division III of the majority opinion.

Since Kisling v. Thierman, 214 Iowa 911, 243 N.W. 552, we have consistently held a violation of a law of the road established by statute or ordinance is negligence per se in the absence of a showing of legal excuse. The only exception to the rule is in

driving on the wrong side of the road where an accident occurs outside of cities and towns (Code section 321.298).

We have applied this rule to violation of Code section 321.297 (formerly Code section 5019) which provides:

"Traveling on right-hand side. The operator of a motor vehicle, in cities and towns, shall at all times travel on the right-hand side of the center of the street."

In Winter v. Davis, 217 Iowa 424, 251 N.W. 770, plaintiff had stopped his vehicle on his right-hand side of the street in Mason City and was getting out when defendant coming from the opposite direction drove to his left across the center of the street and into plaintiff's stopped vehicle. We held violation of Code section 5019 (now section 321.297) negligence per se as defendant offered no legal excuse.

Silvia v. Pennock, 253 Iowa 779, 113 N.W.2d 749, involves a collision of two vehicles traveling in opposite directions on a Des Moines street. In discussing the rule established by Kisling and the only exception (violation of Code section 321.298) at page 787 of 253 Iowa, page 754 of 113 N.W.2d, we said:

"As explained in Division III hereof, violation of 321.298 is merely prima-facie evidence of negligence, not negligence per se or as a matter of law, as is violation of 321.297. * * * However, violation of 321.297 may be justified only by evidence of a legal excuse therefor."

In McMaster v. Hutchins, 255 Iowa 39, 120 N.W.2d 509, we compare section 321.297 with section 321.298 which provides:

"Meeting and turning to right. Persons on horseback, or in vehicles, including motor vehicles, meeting each other on the public highway, shall give one-half of the traveled way thereof by turning to the right."

In the McMaster case at page 47 of 255 Iowa, page 513 of 120 N.W.2d, we state:

"Violation of this statute [section 321.298] is only prima facie evidence of negligence, not negligence per se or as a matter of law, as is violation of other statutory rules of the road, including 321.297 requiring motorists in cities and towns to travel at all times on the right of the center of the street. Noncompliance with 321.298 may be justified by evidence the motorist was

in the exercise of reasonable care under the circumstances, notwithstanding such noncompliance. However, violation of other statutory rules of the road may be justified only by showing one of the four recognized legal excuses therefor. Worthington v. McDonald, 246 Iowa 466, 473, 474, 68 N.W.2d 89, 93, 94, 47 A. L. R.2d 135, 140, 141, and citations; Silvia v. Pennock, 253 Iowa 779, 113 N.W.2d 749, 752, 754."

See also Iowa State Bar Association Uniform Instruction No. 4.8.

Thus it must be observed we have given section 321.297 the meaning expressed by its clear and unambiguous provisions.

The majority opinion without overruling the cited cases is apparently holding that section 321.297 means what it says if plaintiff's vehicle (parked or not) is struck head on by defendant's vehicle but not if plaintiff is struck from the rear.

The holding of the majority puts the meaning of section 321.297 into a complete state of confusion. What are the rights and duties of drivers attempting to enter a city street from a private driveway? In Riddle v. Frankl, 215 Iowa 1083, 247 N.W. 493, we considered a pedestrian's right to assume a vehicle would not be driven to extreme left-hand side of a city street. What happens to the right to assume under the holding of the majority?

No citation of authority is needed for the proposition that we have no right to ignore and change a clear and unambiguous statutory rule of the road just because we dislike following slow-moving traffic in cities and towns. As to section 321.297, I believe the majority opinion does just that.

I would continue to follow the cited cases and give section 321.297 its clear meaning, reserving to a violator the right to show legal excuse.

SNELL, J., joins in this dissent.